UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEAN M. MENDENDORP,

    Plaintiff,

v.                                            Case No. 1:11-cv-266
                                              Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on July 19, 1952 (AR 31).[1] She completed one year of college (AR 32). Plaintiff alleged a disability onset date of January 1, 1997, which she later amended to October 1, 2000 (AR 34-35, 91).[2] Plaintiff had previous employment as an accounts payable coordinator, accounts receivable coordinator, bookkeeper, payroll assistant supervisor, payroll administrator and accounting assistant (AR 126-33). Plaintiff identified her disabling conditions as: encephalopathy; myeloproliferative disorder; Budd Chiari Syndrome; cirrhosis; and "HBP in liver" (AR 147). Plaintiff's conditions limited her ability to work as follows:

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes that plaintiff did not file her application for DIB until September 10, 2007 (AR 91), several years after her alleged disability onset date.

> Fatigue and periodic memory loss and confusion make it impossible to do accounting work. The confusion and fatigue caused by my various disorders and the tiring effect of the chemotherapy make it difficult if not impossible to do any work. The encephalopathy varies as my liver function varies. The memory loss ranges from mild to the possibility of coma.

(AR 147). On January 8, 2010, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 16-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of October 1, 2000 through her last insured date of March 31, 2006 (AR 13). At step two, the ALJ found that through the date last insured, plaintiff suffered from the severe impairment of Budd Chiari Syndrome (a condition diagnosed in 1999) (AR 18). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following restrictions:

> stand/walk about 2 hours and sit up to 6 hours of an 8-hour workday with normal breaks; lift up to 20 pounds occasionally, lift/carry up to 10 pounds frequently; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; but never climb ladders, ropes, or scaffolds.

(AR 20). The ALJ further found that through the date last insured, plaintiff could perform her past relevant work as an accounting assistant, payroll assistant supervisor, bookkeeper and accounts receivable [sic] (AR 22). In reaching this determination, the ALJ found that these jobs did not require performance of work-related activities precluded by plaintiff's RFC (AR 22). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2000 (the alleged onset date) through March 31, 2006 (the date last insured) (AR 22).

### III. ANALYSIS

Plaintiff has raised three issues on appeal.

### A.  The decision fails to properly evaluate the treating source's medical opinion under 20 C.F.R. § 404.1527(d)(2).

Plaintiff contends that the ALJ failed to give proper weight to the opinion of treating physician, Jeffrey VanWingen, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a

treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).

In tracing plaintiff's medical history, the ALJ noted that she was diagnosed with Bud Chiari syndrome in about 1999 and underwent surgery that year (AR 18). Plaintiff was placed under the care of Martin J. Bury of St. Mary's Lack's Cancer Center (AR 18). Dr. Bury confirmed that plaintiff had no surgery since August 1999 (AR 18). Plaintiff is seen annually by two physicians at the University of Michigan, Drs. S. Janardan and R. J. Fontana (AR 18). While plaintiff was on a liver transplant list, her liver function has been stable for the last several years and she is no longer on the acute transplant list (AR 18). Dr. Fontana indicated on February 2, 2005 that plaintiff's condition was stable and that an increase in physical activity would be worthwhile (AR 18, Exh. 3F p 83). In August 2005, Dr. Jaradan indicated that plaintiff was feeling quite well and had done well since the placing of the shunt in 1999 (AR 19, 3F, p 85). By October 25, 2006 - more than six months after plaintiff's last insured date - Dr. Fontana indicated that plaintiff had developed significant collateral circulation such that her liver disease was "very stable" and that plaintiff was on hold for a liver transplant because she was doing so well (AR 18, Exh. 3F, p. 97).

The ALJ reviewed Dr. VanWingen's treatment of plaintiff as follows:

> Jeffrey VanWingen, MD, claimant's family medicine specialist, treated claimant from August 1, 2000, through December 5, 2008. He said claimant has a blood condition called polycythemia rubra vera, a myeloproliferative disorder, akin to a neoplastic or cancerous process. It produces too many of certain blood cells that may cause complications of stroke or clotting disorders. Claimant had a serious blood clot in the main vein of her liver; this condition is known as Budd Chiari Syndrome. The abnormality is in the bone marrow which produces blood cells and includes side issues of neuropathy of the feet, peripheral edema, swelling and depression. He further explained that because of the increased pressure in her venous system caused by Budd Chiari, her fluid is pushed to various portions of her body, including her abdominal cavity and legs. It then finds its way to the legs, due to gravity, when she stands or does any upright positioning. He indicated it was a

"fair bet" that claimant has been unable to perform sedentary work in [sic] August 2000 (Exhibit 19F).

(AR 19).

The ALJ discounted Dr. VanWingen's statements as follows:

Claimant said that Dr. VanWingen, her family medicine specialist, was not as aware of her condition as the specialists to whom he referred her. Nevertheless, Dr. Van Wingen] gave a statement in the record that almost exclusively discusses claimant's present condition. This is irrelevant to the period at issue through the date last insured. Further, when asked if claimant were unable to do sedentary work when he began treating her in August 2000, he said that was a "fair bet." But in doing so, Dr. VanWingen contradicts his own medical records in that they do not contain any indication of such limitations (Exhibits 5F, 19F, 2lF). Although Dr. VanWingen was claimant's treating family physician for 8 years, his opinion is not consistent with his own medical records, nor that of the medical specialists at University of Michigan Hospital or Lacks Cancer Center. His conclusions and findings are therefore unpersuasive; and while they have been considered, are not given great weight (SSR 96-2p).

(AR 21-22).

The ALJ articulated good reasons for not giving Dr. VanWingen's comments more weight. The doctor's sworn statement from November 3, 2009, referred almost entirely to plaintiff's current condition (AR 955-66). While this evidence might be relevant to plaintiff's condition in November 2009, it does not reflect her condition during the relevant time period (i.e., October 1, 2000 through March 31, 2006). *See Mingus v. Commissioner*, No. 98-6270, 1999 WL 644341 at *5 (6th Cir. Aug. 19, 1999) (deterioration of plaintiff's eyesight in August 1996 is not relevant to plaintiff's condition as it existed on her last insured date of December 31, 1993); *VanVolkenburg v. Secretary of Health and Human Services*, No. 8-1228, 1988 WL 129913 at *3 (6th Cir. Dec. 7, 1988) (deterioration of plaintiff's condition in 1987 not material to her condition in 1985); *Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (new medical evidence compiled in March 1985 that may show a deterioration in the claimant's condition "does

not reveal further information about the claimant's ability to perform light or sedentary work in December 1983").

The only reference to the relevant time period involved a question direct to Dr. VanWingen regarding plaintiff's condition in August 2000. When asked, "[d]o you think that she would have been unable to do sedentary work even back to when you began treating her in August of 2000?" the doctor responded, "That's a fair -- that's a fair bet" (AR 964). As defendant points out, Dr. VanWingen's progress notes in the record are minimal, being dated May 2006 and December 2006, years after August 2000 and months after plaintiff's last insured date (AR 531-40). The ALJ correctly pointed out the lack of evidence in the record to support Dr. VanWingen's (rather vague) statements regarding plaintiff's inability to perform sedentary work in August 2000. This claim of error should be denied.

> **B. An appellate court cannot conduct meaningful review of the ALJ's unfavorable decision because the vocational expert failed to give the source of his testimony.**

At step four of the sequential process, the ALJ found that plaintiff could perform her past relevant work based upon testimony given by the vocational expert (VE). In this claim of error, plaintiff contends that the VE's testimony is flawed for failing to provide the "source" of his testimony. Plaintiff's contention is without merit. The Social Security Act requires a claimant to show at step four that his impairments are so severe that he is "unable to do his previous work." 42 U.S.C. § 423(d)(2)(A). Plaintiff did not meet this burden at step four. The ALJ relied on the testimony of the VE to establish that plaintiff could perform her past relevant work of accounting assistant, payroll assistant supervisor, bookkeeper and accounts receivable [sic] (AR 22, 51-52). The ALJ elicited this testimony in response to a hypothetical question posed to the VE which assumed

8

that a the individual had limitations nearly identical to plaintiff's RFC (AR 20, 51-52). In response to this question, the VE testified that such an individual could perform "[a]ll past work" engaged in by plaintiff (AR 51-52).

Plaintiff contests the VE's opinions, claiming that the VE did not give the ALJ the "source" of his testimony or discuss conflicts with the *Dictionary of Occupational Titles* (sometimes referred to as the "Dictionary" or "*DOT*"). Plaintiff appears to contest the VE's competency to render an expert opinion. The record reflects that plaintiff did not contest the VE's qualifications or competency to render his opinion at the administrative hearing (AR 50-53). Plaintiff cannot contest the VE's qualifications at this late stage. *See Yopp-Barber v. Commissioner*, 56 Fed. Appx. 688, 689-90 (6th Cir. 2003) (claimant cannot complain of the VE's failure to provide statistical evidence in support of his testimony in the absence of an express request by counsel for those statistics); *Helton v. Commissioner*, No. 99-5736, 2000 WL 658056 at *2 (6th Cir. May 9, 2000) (claimant's failure to dispute the VE's competency at the administrative hearing forfeits the issue for purposes of judicial review). Even if plaintiff could contest the VE's qualifications at this stage, her claim is without merit. The Sixth Circuit has rejected the argument that the Commissioner is bound by the *DOT*'s characterization of occupations, holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). *See also Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995) (same). Accordingly, plaintiff's claim of error regarding the VE's testimony should be denied.

### C. New and material evidence demonstrates that this case can be remanded under sentence six.

After the ALJ issued his unfavorable decision on January 8, 2010, plaintiff obtained a new opinion from her treating physician Timothy J. O'Rourke, M.D. (dated February 26, 2010) (AR 241-50) and a revised opinion from Dr. VanWingen (dated March 5, 2010) (AR 231-39), both of which were submitted to the Appeals Council (AR 252-56). Plaintiff seeks a remand so that the Commissioner can review these new opinions.

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam). Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Commissioner (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Commissioner (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

Here, plaintiff's request is for a pre-judgment remand to consider new evidence under sentence six, which provides that "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

"Good cause" is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

Plaintiff's request should be denied. Good cause does not exist for the new evidence submitted by Drs. O'Rourke and VanWingen, because this evidence was generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability. *See Koulizos*, 1986 WL 17488 at *2. The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process); *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (explaining that the good cause requirement would be meaningless if every time a claimant lost before the agency he was free to seek out a new expert witness who might better support his position). Furthermore, as defendant points out, Dr. O'Rourke's opinion was not relevant in any event, because he did not treat plaintiff during the relevant time period, having first seen her in May 2009 (AR 243). *See Mingus*, 1999 WL 644341 at *5; *VanVolkenburg*, 1988 WL 129913 at *3; *Oliver*, 804 F.2d at 966. Accordingly, plaintiff's request for a sentence-six remand to review this new evidence should be denied.

**IV.     Recommendation**

Accordingly, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: January 30, 2012                                       /s/ Hugh W. Brenneman, Jr.
                                                              HUGH W. BRENNEMAN, JR.
                                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).